UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| BEATRICE DION,<br>Plaintiff,<br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, and JPMORGAN CHASE BANK, N.A. d/b/a CHASE AUTO FINANCE,<br>Defendants. | Case No.:<br>Plaintiff's Complaint for Violations of 15 U.S.C. §1681 *et seq.*<br><br>**(Jury Trial Requested)** |

Plaintiff BEATRICE DION, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC and Defendant JPMorgan Chase Bank, N.A. d/b/a Chase Auto Finance (referenced collectively as "Defendants").

## I. <u>INTRODUCTION</u>

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendants. Plaintiff contends that Equifax Information Services, LLC failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and failed to conduct a reasonable investigation of Plaintiff's credit reporting disputes. Plaintiff

further alleges that Defendant JPMorgan Chase Bank, N.A. d/b/a Chase Auto Finance failed to conduct a reasonable investigation of Plaintiff's disputes. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Middle District of Florida is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendants regularly transact business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in Brevard County, Florida.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Equifax Information Services, LLC (hereinafter referred to as "Equifax" or "CRA Defendant") is one of the largest credit reporting agencies in the

United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

8. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

9. Defendant JPMorgan Chase Bank, N.A. d/b/a Chase Auto Finance (hereinafter referred to as "Chase Auto") is a leading digital financial services company, with principal place of business in New York, New York, that conducts a substantial amount of business in Florida.

10. During all times pertinent to this Complaint, the Defendants were authorized to conduct business in the State of Florida and conducted business in the State of Florida on a routine and systematic basis.

11. During all times pertinent to this Complaint, the Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12. Any violations by the Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

13. The Defendants failed to maintain procedures reasonably adapted to avoid any such violations.

## IV. FACTUAL BACKGROUND

14. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

15. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

16. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

17. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18. Experian, Trans Union, and Equifax, the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

19. The CRA Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

20. The CRA Defendant regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders. Bankruptcy filings are matters of public record and are routinely and systematically reported to and maintained by CRA's.

21. Upon the filing of a consumer bankruptcy petition, and throughout the pendency of the case, consumer reporting agencies receive notice of such filings through automated electronic feeds and public record reporting services designed to ensure timely and accurate inclusion of bankruptcy information in consumer credit files.

22. The diligence the CRA Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

23. The CRA Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

24. The CRA Defendant knows the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

25. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like CRA Defendant) to make lending decisions.

26. A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

27. The CRA Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

28. However, the CRA Defendant also knows that pre-petition debts are rarely reaffirmed or successfully challenged in an adversary proceeding.

29. Further, the CRA Defendant knows that if reaffirmation agreements or adversary proceedings (successful or not) exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

30. Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged) can be easily retrieved from the same sources from which the Defendant independently obtains consumer bankruptcy case information.

31. The CRA Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

32. Despite the availability of accurate consumer information, the Defendant regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

33. The CRA Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to the CRA Defendant, already included in its credit files, contained in public records that it regularly accesses, or sourced through its independent and voluntary efforts.

34. The CRA Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b).

35. The CRA Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in the CRA Defendant's own files.

36. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the Defendant for their inaccurate credit reporting following a Chapter 7 discharge.

37. Thus, the CRA Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, the CRA Defendant is on

continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

38. Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about April 14, 2025, in the United States Bankruptcy Court.

39. Plaintiff received an Order of Discharge on or about July 17, 2025.

40. Thereafter, Plaintiff was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

41. The CRA Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

42. Upon information and belief, the CRA Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

43. In the Public Records section of Plaintiff's consumer reports, the CRA Defendant failed to include the Plaintiff's bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

44. The CRA Defendant is aware that it is generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged

through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

45. The CRA Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

46. The CRA Defendant failed to report **any** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

47. Specifically, the CRA Defendant is inaccurately reporting the Plaintiff's JPMCB/Chase Auto account, with account number ending in 5206 ("the Account"), which was discharged in Plaintiff's Chapter 7 Bankruptcy on July 17, 2025, with a status of "Charge Off" and a past due balance of $9,847.00.

48. The Account listed above was discharged in Plaintiff's bankruptcy on July 17, 2025. Therefore, the Account should have been reported as discharged in bankruptcy with a zero-dollar balance.

49. The CRA Defendant did not indicate that the Account was discharged in bankruptcy or report the Account with a zero balance, despite being notified of Plaintiff's bankruptcy.

50. Unlike Equifax, the other CRA's, Experian and Trans Union, reported Plaintiff's bankruptcy in the Public Records section of Plaintiff's consumer reports and

indicated that these pre-bankruptcy accounts were "Discharged/Included in Bankruptcy Chapter 7" and carried zero-dollar balances.

51. The CRA Defendant knew or should have known that Plaintiff's debts were discharged in bankruptcy, including the Chase Auto account.

52. The CRA Defendant was required to report the Account as discharged with a zero balance.

53. After discovering Equifax's inaccurate reporting of the Account, Plaintiff spent several months attempting to resolve the issue by submitting multiple online disputes to Equifax.

54. After Equifax failed to correct the Account's inaccurate reporting in response to Plaintiff's multiple online disputes, Plaintiff submitted a written dispute to Equifax by certified mail on or about August 17, 2026.

55. In her dispute letter, Plaintiff listed the Chase Auto account including the account number, stating specifically that the account, having been discharged in bankruptcy, should have been reported with a status of discharged in bankruptcy with a zero balance.

56. Equifax received Plaintiff's dispute on August 21, 2026, as evidenced by the certified mail tracking information in Plaintiff's possession.

57. Despite receipt of Plaintiff's specific dispute, Equifax failed to adequately investigate the dispute and continues reporting inaccurate information to this day.

58. Despite Plaintiff's dispute specifically listing the discharged JPMCB/Chase Auto account, Defendant continues to report the Account with a status of "Charge Off" with a past due balance of $9,847.00 instead of reporting the account as included in or discharged in bankruptcy with a zero balance.

59. Upon information and belief, Equifax notified Defendant Chase Auto of Plaintiff's disputes.

60. Despite receipt of Plaintiff's disputes by Equifax, Chase Auto did not conduct a reasonable investigation of Plaintiff's disputes.

*Plaintiff's Damages*

61. Upon information and belief, had the CRA Defendant accurately reported the discharged accounts with zero balances, Plaintiff's credit scores and/or debt to income ratio ("DTI") would have been better, thereby improving Plaintiff's credit worthiness.

62. The false increased debt due to the CRA Defendant's inaccurate reporting also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

63. As a direct result of the CRA Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

64. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

65. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## COUNT I
## Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b) AGAINST EQUIFAX

66. Plaintiff repeats and realleges the foregoing allegations in paragraphs 38-65 as if fully set forth herein.

67. The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

68. In this case, Equifax negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

69. Equifax had an obligation to report information regarding Plaintiff's bankruptcy filing and discharge in Plaintiff's consumer reports.

70. Equifax further had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

71. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Equifax from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

72. Defendant knew or should have known that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

73. Defendant Equifax knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debts with zero-dollar balances.

74. Furthermore, Defendant knew or should have known that CRA's have a duty to accurately report bankruptcy filings as matters of public record in the public records section of a consumer report, including timely inclusion of such filings obtained through federal court records and other established public record reporting sources.

75. Additionally, Equifax possesses or could easily obtain substantial written materials that detail their duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

76. Defendant Equifax knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

77. Yet Equifax inaccurately reported Plaintiff's JPMCB/Chase Auto account, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy" and a balance greater than zero.

78. Despite knowledge of these legal obligations, Equifax willfully and consciously breached its duties under the FCRA. Accordingly, Equifax deprived Plaintiff of Plaintiff's rights under the FCRA.

79. Upon information and belief, individual furnishers of account information notified Equifax of Plaintiff's bankruptcy, yet Equifax failed to report the bankruptcy in the Public Records section of Plaintiff's consumer report.

80. Furthermore, Equifax reported the account that predated Plaintiff's bankruptcy as delinquent with balances owed after Plaintiff's discharge (instead of zero-dollar balances).

81. Defendant Equifax thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to Equifax.

82. As a result of Equifax's inaccurate reporting, Plaintiff's creditworthiness has been damaged.

83. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

84. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

85. Defendant Equifax is a direct and proximate cause of Plaintiff's damages.

86. Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

**COUNT II**
**Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681i**
**AGAINST EQUIFAX**

87. Plaintiff repeats and realleges the foregoing allegations in paragraphs 38-65 as if fully set forth herein.

88. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

89. The FCRA provides that "if the accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the

consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(a).

90. However, Defendant Equifax has repeatedly failed to conduct a reasonable investigation to determine whether the disputed information is accurately and correctly reported on Plaintiff's credit report, despite the expiration of its time to do so.

91. Equifax's conduct was willful, considering the fact that Equifax could have easily verified what the Plaintiff was telling it – that the account in dispute was discharged in Plaintiff's bankruptcy – but it nevertheless recklessly disregarded that information and failed to conduct an adequate investigation into the Plaintiff's dispute, continuing to report the JPMCB/Chase Auto account as "Charge Off" instead of discharged in bankruptcy.

92. Furthermore, Equifax failed to conduct a reasonable investigation of the public records associated with Plaintiff's consumer file, including failing to verify and correct the absence of Plaintiff's bankruptcy information in the public records section of Plaintiff's credit report.

93. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT III
## Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)
## AGAINST CHASE AUTO

94. Plaintiff repeats and realleges the foregoing allegations in paragraphs 38-65 as if fully set forth herein.

95. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

96. On numerous occasions, including in August 2026, Plaintiff initiated disputes with the credit bureau Equifax disputing the accuracy of the account being reported by Chase Auto.

97. Upon information and belief, Chase Auto received notice of these disputes from Equifax.

98. Chase Auto was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

99. Even after Plaintiff properly disputed the Account with Equifax, Chase Auto refused to conduct a reasonable investigation and continued inaccurately reporting the Account on Plaintiff's credit report.

100. Chase Auto's conduct violated section 1681s-2(b) of the FCRA.

101. As a result of Chase Auto's conduct, Plaintiff was harmed, as discussed above.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a) Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681 *et seq.*

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VI. JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: October 9, 2026

/s/ Joseph Kanee
Joseph Kanee, Esq.
Florida Bar No. 1040922
MARCUS & ZELMAN, LLC
1508 SW 23 Street
Fort Lauderdale, FL 33315
Tel: (848) 346-4358
Email: joseph@marcuszelman.com
*Attorney for Plaintiff*